Judge Owsley
delivered the opinion of the court.
This was an action of covenant, brought by Kenton on the following writing, viz: "Articles of agreement, made this 27th day of November, 1782, between Hubbard Taylor of the one part, and Simon Kenton, of the county of Lincoln, of the other part: Witnesseth, that whereas the said Taylor having delivered unto the said Kenton land warrants to the amount of 166,270 acres, in the name of sundry persons, which the said Kenton doth agree to locate and have surveyed in the respective owners names, and for the trouble of so doing, the said Taylor engages that the said Kenton shall have one half of the said lands, clear of any expense, to be divided equally between the said Kenton and the respective persons, for which there shall be a just title obtained."
And the declaration alledges, that among the warrants put into the hands of Kenton to be located, were the following, to wit: No. 10135, &c. in the name of John Taylor; and that Kenton, by virtue of those warrants, on the 2d of January, 1783, made the following entry in the name of John Taylor, viz: "John Taylor enters 24449 acres of land, on eight treasury warrants, No. &c. to be laid off in one or more surveys lying on the north side of Main Licking; beginning on the north bank of Licking creek, at the lower corner of John Moseby’s entry of 10,000 acres, and running down the north side of said creek and binding on the same, to the upper corner of David Lietch’s entry of 15,000 acres, and thence extending a north-eastwardly course, binding with the lines of the said Moseby and *2 Lietch, and continuing the course until the quantity of vacant land is obtained, exclusive of all legal prior claims." And avers that the said Kenton, prior to the 1st April, 1787, caused the said entry to be surveyed in the name of the said John Taylor, by a legally authorised deputy surveyor; and for breach of the covenant alledges that the said H. Taylor did not, as he was bound to do, obtain from the deputy surveyor aforesaid, the plat and certificate aforesaid, and return the same to the office of the surveyor and cause it to be recorded, nor did he return the true plat and certificate of survey and cause it to be registered and pay the expences and procure a patent for the same, nor did he cause the said John Taylor or any other to do and perform, or cause to be done and performed, all or any of the said acts; and, moreover, the said Kenton avers that the said John Taylor, on the 8th day of September, 1788, without the knowledge, privity or consent of him, the said Kenton, by an entry of withdrawal, made in the entry book of the surveyor, withdrew the said entry of 24,449 acres, so that in consequence thereof no patent has, or could have thereafter, issued for the land aforesaid, whereby the said H. Taylor became disabled from procuring to said Kenton any part of the land, as, by his covenant, he was bound to do.
To this declaration the defendant, Taylor, demurred, and filed 13 pleas.
To the first, second, third, eighth, ninth, and tenth pleas issues in fact were made up between the parties.
But the defendant, Taylor, demurred to Kenton’s replications to the fourth, fifth, sixth, seventh, eleventh, and twelfth pleas and the demurrers to the replications, as well as that to the declaration being joined, judgment in bar of the plaintiff’s action was rendered by the court.
From that judgment, Kenton has appealed to this court.
In reviewing the judgment of the court below, as the replications of Kenton were obviously irregular, we are necessarily led to examine not only the sufficiency of Kenton’s declaration, but also the validity of Taylor’s 4th, 5th, 6th, 7th, 11th and 12th pleas, to which those irregular replications were made.
The 4th plea by protestation, not admitting the survey alledged in the declaration to have been made, alledges that no just title was obtained for the land in the declaration mentioned, because (it avers) Kenton never gave notice to *3 the defendant that the survey in the declaration mentioned was in fact made.
The 5th plea, containing a similar protestation, alledges that because the plaintiff failed to give notice to the defendant within three months from making of the survey, of its having been made, no just title was obtained for the land in the declaration mentioned.
The 6th plea alledges that no just title was obtained for the land, because of the plaintiff’s failure to give notice of the making of the survey, to the said John Taylor, within three months from the time of its having been in fact made.
The 7th plea alledges that the survey was not made and notice thereof given within six years from the date of the covenant, either to the defendant or to John Taylor.
The 11th plea alledges that no title was obtained for the land in the declaration mentioned, because the entry was vague, and before notice of survey, it was covered by better titles obtained by other persons. And,
The 12th plea alledges, that the land surveyed was granted by the commonwealth to others before the defendant had notice of the survey, whereby a just title could not be obtained by him for the land.
The first question in order for the consideration of this court, involves an enquiry into the sufficiency of the declaration; but in making this enquiry, as the declaration no, where avers notice, either to John Taylor or to the defendant, that the survey had been made, it is not improper, but more convenient to consider, the validity of the pleas first recited, whose objects appear (exclusively, though in different forms,) to present the question of notice!
The question of notice is not, however, the only one raised by the objections to the declaration, but it is also contended, that the plaintiff should not only have notified the defendant of the survey having been made; but also have caused it to have been returned to the surveyor’s office, whereby a “just title might have been acquired;" but not having alledged either to have been done, it is also contended that the subsequent withdrawal of the entry, as it was done by John Taylor, over whom the defendant had no control, cannot have operated as a breach of the covenant.
From the stipulations contained in the covenant, we cannot suppose it to have been incumbent on Kenton to have caused the survey to have been returned to the office of the *4 surveyor, for, having made the survey, the surveyor was bound by the duties of his office, to cause the same to be “recorded in a book kept by him for that purpose," and under the engagement of Kenton “to have surveyed,” he cannot be presumed to have undertaken for the performance of the subsequent duties of the surveyor.
A locator of lands on the shares, tho' bound by his contract to cause them to be surveyed, is not bound to cause the survery to be returned and recorded:—that is the duty of the surveyor.
The locator is bound to give his employer notice of his having survey'd the land, in time to save a forfeiture.
The locator is absolved from the duty of giving his employer such notice, if before a forfeiture could have attached, the entry withdrawn.
But having covenanted to have the survey made, unless he stands excused by the subsequent withdrawals of the entry, we have no doubt that notice ought to have been given to the defendant of the survey having been made.
As a conveyance could not have been made to the plaintiff until a title could have been perfected by the emanation of a grant from the commonwealth, it cannot be supposed that the parties intended to impose on the defendant an obligation to convey, until consistently with the laws, patents might be obtained from the commonwealth for the lands about which the parties were contracting; and as other things were necessary to be done after the survey was made, before the patent could issue, and as the defendant cannot be presumed to be cognuzant of the survey to enable him to obtain the patent, and comply with his covenant, he unquestionably should have had notice of the survey having been made.
The plaintiff, however, was not bound to give notice within three months of the date of the survey; for although the survey should have been regularly recorded within that time, the failure of the surveyor to do so, would not preclude him thereafter from admitting it to record. But, as for a failure to cause the plat and certificate of survey to be returned to the register’s office in a prescribed time, the land might be forfeited; the defendant should have had such notice as would have enabled him, by a return of the plat, to prevent such forfeiture, unless by the withdrawal by John Taylor, such notice was rendered unnecessary.
But by the various Legislative enactments upon the subject, it is obvious, that no forfeiture can have attached for the failure to return the plat, &c. before the entry was withdrawn by John Taylor.
The plaintiff, therefore, cannot have been in default previous to that time. And as we suppose the defendant, by covenanting to secure the plaintiff in one moiety of John Taylor’s entry, must be presumed to have undertaken for his acts, that withdrawal by disabling the defendant from performing his covenant, not only dispensed with the ne *5 cessity of notice, but operated as a breach of his covenant. Thus, from what has been said, it will be perceived that the declaration not only contains a sufficient cause of action, but that neither the 4th, 5th, 6th, or 7th pleas will be found to contain a valid bar.
Haggin for appellant, Wickliffe for appellee.
And with respect to the 11th and 12th pleas, we are also of opinion they are insufficient. Whilst it will be admitted, that an enquiry into the conflicting claims to the land at the date of the withdrawal of the entry, will be proper in mitigation of damages, we suppose the ground assumed in those two pleas, of the entry made by Kenton, being vague, and the land covered by superior claims, before notice to the defendant of the execution of the survey, furnishes no legitimate bar to the action. Although such claims may have existed, was it not for the withdrawal of the entry, the defendant might have obtained a patent, and complied with his covenant in procuring a conveyance of a moiety to the plaintiff.
A majority of the court, therefore, (the Chief Justice dissenting) are of opinion that the judgment of the court below is erroneous, and must be reversed, and the cause remanded to that court, and such farther proceedings there had, as may be consistent with this opinion.